UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN P. NEWTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-1382-RHH |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff John P. Newton's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court reverses and remands the Commissioner's decision.

**I.     Background**

On August 6, 2018, Newton applied for DIB and SSI, alleging that he has been unable to work due to disability since March 8, 2008 (Tr. 248, 250.) Newton alleged disability due to the following conditions: back problem, blood disease, broken back, porphyria, pancreatitis, and

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

chronic allergies. (Tr. 280.) His application was initially denied and he filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 144-45.) On September 11, 2019, the ALJ held a hearing on Newton's claim, and on February 12, 2020, the ALJ held a supplemental hearing. (Tr. 31-67, 68-93.) Newton was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on June 11, 2021, the ALJ found Newton was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 24.) After exhausting his claim, Newton filed a Complaint in the United States District Court, Eastern District of Missouri, Case No. 4:22-cv-210 on February 21, 2022. (Tr. 1321.) On Defendant's Motion, the United States Magistrate Judge issued an order and Judgment remanding this action to the ALJ for a new decision that includes further consideration of the evidence related to Newton's back impairment. (Tr. 1243-1245, 1247.)

In an order dated September 21, 2022, the SSA Appeals Council vacated the hearing decision, and remanded Newton's case to the ALJ. (1248-1251.) On August 30, 2023, and following a second hearing, the ALJ issued another unfavorable decision. (Tr. 1171-1184.) Newton timely filed for judicial review.

## II.     Evidence before the ALJ

The Court adopts the statement of facts set forth in Newton's statement of facts (ECF No. 14-1) and Defendant's response and statement of additional material facts (ECF Nos. 15-1, 15-2). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

As discussed above, Newton provided testimony at three hearings held on September 11, 2019, February 12, 2020, and August 30, 2023. Newton testified that in May of 2008, he ran into

2

a tree while driving a motorcycle 65 miles per hour. (Tr. 41.) The accident injured his back, and he underwent a spinal fusion procedure. (Tr. 51.) After the spinal fusion and some follow up treatment in 2009, he did not follow up with a doctor again until 2012. (Tr. 1202.) Newton did not consistently have medical insurance and does not recall at which point during that time he had insurance. (Tr. 1202.)

Before the 2008 motorcycle accident, Newton worked mainly as a plumber and as a pool specialist doing plumbing on pools. (Tr. 46, 72.) He has not worked since 2007. (Tr. 72.) Newton has been incarcerated during the relevant time period and estimates those times to be 2010-2012 and 2013-2015. (Tr. 45-46.)

Newton testified that he is in constant pain but has learned to deal with it. (Tr. 43.) He reports his back pain is on average a 6 or a 7 on the pain scale. (Tr. 1210.) Newton is in pain sitting, standing, walking, or laying down. (Tr. 43, 47.) Newton testified to being able to sit about 20 or 30 minutes before needing to move. (Tr. 51.) When his back starts burning from sitting, he stands up and walks around. (Tr. 52.) He can stand more than anything else, and he stands for an hour or an hour and a half before needing to get off his feet. (Tr. 52, 84.) He walks around the yard or the house and could walk a block or two if he wanted, but he doesn't like getting further away from the house in case his legs go numb. (Tr. 53.) Once his legs start going numb, he cannot walk. (Tr. 54.) He lays down a couple of times a day. (Tr. 1219.) He sleeps sitting up in a recliner for about 45 minutes to an hour at a time, two to three times a night. (Tr. 52.) Colder weather is bad for his back and can make his spinal fusion implant rods get cold, putting him in "excruciating" pain. (Tr. 54, 56, 1219.) If he drops something, he cannot bend over to pick it up, he has to get down on the ground. If he is on the ground for too long, he needs help getting back up. (Tr. 82, 1218.) He

3

testified that a doctor told him not to lift anything heavy or have anything high. (Tr. 83.) Newton does not lift anything heavy and estimates that 15 or 20 pounds would be too heavy. (Tr. 83.)

Newton has also experienced pain in both shoulders since the accident. (Tr. 1208.) In 2022, Newton slipped and fell and tore his left rotator cuff, which required surgery. (Tr. 1206-1207.) The left shoulder has improved since the surgery, but he still has trouble with both, the left shoulder more than the right. (Tr. 1208.) He cannot stick his left arm straight out or to the side or lift anything high above his head. (Tr. 1208.) He also has asthma and is a smoker. (Tr. 79-80.)

Newton is not currently receiving treatment for his back or his asthma. (Tr. 83.) He testified that he has never seen a regular doctor and has not liked doctors much since he was a child. (Tr. 57.) He also testified that he would be seen by a doctor more regularly if he had insurance and could afford it. (Tr. 55.) He has a cane he uses now and then, but it was not prescribed by a doctor. (Tr. 1213.) He also has back braces to provide different levels of support. (Tr. 1218.) Newton has taken over the counter Naproxen for the pain and uses a heating pad or Biofreeze. (Tr. 55-56.) He has also taken Percocet and "could have got a pain pill here or there from somebody." (Tr. 1204.) He testified to using methamphetamines, opiates, marijuana, and benzodiazepines without a prescription for his anxiety. (Tr. 89, 1205.) At the time of the 2019 and 2023 hearings, he testified to being clean and sober, although records reflect drug use in 2018 and 2021. (Tr. 39, 1205, 1481, 1608.)

Newton lives in a house with his fiancé, her 16-year-old daughter, and his 5-year-old son. (Tr. 48.) His fiancé and her daughter handle the chores, and he helps when he can. (Tr. 49.) Newton helps cook and helps fold laundry in the basement, and then his fiancé brings it upstairs. (Tr. 49, 81.) He tries to sweep, but he cannot bend over to sweep debris into the dustpan. (Tr. 1211.) He

4

cannot take out the trash because it's too heavy. (Tr. 1214.) Newton has a driver's license and can drive in "short spurts" but tries not to. (Tr. 50, 1208.)

Although requested by the agency, Newton did not complete an adult function report. As a result, the state agency physician could not fully assess his abilities. The record contains no opinion evidence from any consulting, examining, or treating source.

**III.    Standard for Determining Disability Under the Act**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet

or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## IV.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Newton met the insured status requirements of the Social Security Act through December 31, 2012, and that he had not engaged in substantial gainful activity since March 8, 2008, the alleged onset date. (Tr. 1174.) Next, the ALJ found that Newton has the following severe impairments: degenerative disc disease of the cervical and thoracic spine (status-post fusion operation), degenerative disc disease of the lumbar spine with spondylosis, degenerative joint disease of the left shoulder (status-post rotator cuff repair), and obesity. (Tr. 1174.) The ALJ found Newton's porphyria, cardiac impairment noted as atypical chest pain, abdominal pain and pancreatitis, epicondylitis, and anxiety are nonsevere impairments. (Tr. 1174.)

The ALJ determined that Newton did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Newton had the residual functional capacity to perform medium work with additional limitations. Specifically, the ALJ found that

> [T]he claimant must avoid overhead reaching, with frequent, not constant use of the hands for fine and gross manipulation. He must avoid working with ladders,

6

ropes, and scaffolds. The claimant must also avoid hazards such as unprotected heights and dangerous moving machinery.

(Tr. 1178.) The ALJ found that Newton was unable to perform any past relevant work. (Tr. 1182.) Newton was 41 years old and considered a younger individual age 18-49 on the alleged disability onset date. He subsequently changed age category to closely approaching advanced age. He has a high school education. The ALJ determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. (Tr. 1182.) Based on the foregoing, the ALJ found that there are unskilled (SVP 2), medium exertion level jobs that exist in significant numbers in the national economy that Newton can perform, including hand packager (Dictionary of Occupational Titles (DOT) No. 920.587-018, approximately 12,000 jobs in the national economy), laundry worker (DOT No. 361.685-018, approximately 35,000 jobs in the national economy), and machine tender (DOT No. 699.686-010, approximately 15,000 jobs in the national economy). (Tr. 1183.) Therefore, the ALJ concluded that Newton was not disabled, as defined in the Act, from March 8, 2008 through August 30, 2023. (Tr. 1183-84.)

V.   **Standard for Judicial Review**

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v.*

7

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI.     Discussion

Newton argues that the ALJ erred in two ways: (1) by failing to comply with the Appeals Council's remand directive; and (2) by failing to support the RFC determination with substantial evidence.

### A. Appeals Council's Directive

The Appeals Council Remand Order acknowledged Newton's more recent medical treatment for his back that it felt was not given sufficient consideration by the original ALJ:

8

> However, the Administrative Law Judge did not adequately evaluate the medical evidence that was submitted after the supplemental hearing. The claimant's attorney submitted medical records dated May 2020 through January 2021, which were marked as Exhibits 9F, 10F, and 11F. An examination of the claimant's lower back on October 26, 2020, revealed some abnormal findings including a slow and guarded gait, mild loss of lumbar lordosis, pain upon palpation, and low back pain when performing sitting straight leg raise tests with each leg (Exhibit 9F, page 4). On November 24, 2020, an examination of the claimant's lower back showed mild loss of lumbar lordosis, pain upon palpation, and low back pain when performing sitting straight leg raise tests with each leg (Exhibit 9F, page 23). While the Administrative Law Judge did briefly discuss the claimant's thoracic spine x-ray from October 26, 2020, the Administrative Law Judge did not mention that the radiologist noted an impression of "spondylosis" in the claimant's thoracic and lumbar spine (Tr. 1064, 1127, 1136). Further evaluation of the more recent examinations and their impact on the claimant's ability to perform medium work is necessary.

(Tr. 1250-51.) The SSA Appeals Council directed that upon remand, the ALJ will:

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).
>
> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).

(Tr. 1251.) While the Appeals Council's order provides context for Newton's arguments regarding the RFC determination, any failure to comply with the order is outside the Court's judicial review. *See Jason M. G. v. O'Malley*, No. 23-cv-84 (JFD), 2024 WL 1095915, at *5 (D. Minn. Mar. 13, 2024) ("Title 42 U.S.C. § 405(g) authorizes judicial review only to determine whether substantial evidence supports the Commissioner's factual findings and whether the ALJ committed an error of law."); *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) ("Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals

9

Council's remand order is not subject to judicial review."); *Sanders v. Astrue*, No. 4:11-CV-1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) ("The issue [of] whether an ALJ complied with a remand order evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order."), *report and recommendation adopted*, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013). Accordingly, the Court reviews the ALJ decision to determine if it complies with relevant legal standards, not whether it complied with the Appeals Council's remand order.

### B. RFC Assessment

RFC is the most a claimant can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It requires "'a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "In assessing RFC, the adjudicator must discuss the individual's

10

ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at *7. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Nor is there a requirement that "an ALJ follow each RFC limitation with a list of specific, supporting evidence." *Wilfong v. Berryhill*, No. 4:17-CV-2747-SNLJ, 2018 WL 4489453, at *4 (E.D. Mo. Sept. 19, 2018). While a summary of the medical record does not fulfill the narrative discussion requirement, SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported. *Id.; Pierce v. Saul*, No. 4:19 CV 1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sept. 22, 2020).

Here, Newton's challenge to the ALJ decision relates to the ALJ's physical RFC findings. Newton argues that the ALJ failed to comply with the Appeals Council's directive on remand. That is, on remand the Appeals Council instructed that "[f]urther evaluation of the more recent examinations and their impact on the claimant's ability to perform medium work is necessary" and the ALJ will "provide appropriate rationale [for the RFC] with specific references to evidence of record in support of the assessed limitations." (Tr. 1251.) More specifically, Newton asserts that the ALJ failed to comply with SSR 96-8 in failing to tie any specific evidence to his conclusion that Newton can stand/walk for six hours or lift up to fifty pounds and spend two thirds of the workday lifting and carrying up to twenty-five pounds. (ECF No. 14 at 5.) Defendant responds that the ALJ complied with the regulations and the Appeal's Council's directive in making an RFC assessment that is supported by substantial evidence.

11

As is discussed above, the ALJ found that Newton had the RFC to perform a limited range of medium work with additional limitations related to overhead reaching, use of his hands, and avoidance of ladders, ropes, scaffolds, and hazards such as unprotected heights and dangerous moving machinery. (Tr. 1178.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c); 416.967(c). Social Security Ruling 83-10 further clarifies:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, *e.g.*, taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Additionally, if one can perform medium work, the regulations provide he or she can also do light work, defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b); 416.967(b).

In making his determination, the ALJ did not explain how any evidence of record supported his assessment of medium exertional level capability. In particular, he did not discuss how the medical evidence of record supported his apparent conclusion that Newton had the ability to engage in the standing, walking, and/or lifting activities required for medium work during the relevant period. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.")

The transcript in this case contains approximately 1,700 pages of medical records spanning from 2008 until 2023. The ALJ summarized the medical evidence of record. Both at the hearing and in his opinion, the ALJ questioned the lack of treatment for Newton's impairments. In the opinion, the ALJ stated that "the claimant has not experienced persistent issues related to his physical impairments which severely affect his capacity to perform work activities for a continuous period." *See Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"). The ALJ also highlighted the significant gaps in his treatment. (Tr. 1180.) The ALJ specifically noted the lack of treatment from September 2009 through October 2012. However, Newton testified that he was incarcerated from approximately 2010 through 2012 and 2013 through May 2015, which accounts for much of that time period. (*See* Tr. 19, 37, 46, 591, 603, 630.) Nevertheless, Newton's past incarceration does not account for other gaps in treatment. For example, there is a lack of any evidence of medical treatment related to his back pain from 2016 through fall of 2020, with the exception of a December 2018 emergency room visit

13

for vomiting and abdominal pain associated with pancreatitis. (Tr. 885-888.) The ALJ's reliance on inconsistent treatment and large gaps in treatment as evidence undermining Newton's credibility was appropriate. *See Milam v. Colvin,* 794 F.3d 978, 985 (8th Cir. 2015) (noting that gaps in medical treatment contradict plaintiff's subjective complaints of disability conditions and supports the ALJ's decision to deny benefits); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to an "absence of hospitalizations ..., limited treatment of symptoms, [and] failure to diligently seek medical care").

Nevertheless, upon a thorough review of the record, it is clear that Newton is an individual with chronic back pain. Following Newton's thoracic spine fracture and spinal fusion in May 2008, he reported continued back pain with slight improvement at follow up appointments in June and September 2008. (Tr. 376, 378, 382.) In September 2008, his repeat scans were found to be satisfactory, and his doctor prescribed physical therapy.[2] (Tr. 382.) In December 2008, he went to a new provider to try to establish care, and Newton reported terrible back pain and leg pain and difficulties with activities of daily living, including problems with walking and falling. (Tr. 384-385.) Then, there is no evidence of treatment until nine months later, September 2009, when he reported back pain that has been persistent since the accident. Newton reported he was taking Percocet from a friend, which gave him some pain relief, but was unable to get a prescription due to lack of insurance. (Tr. 386.) His pain was a 6 out of 10, and on physical exam his muscle strength was 5/5 and his reflexes were normal. He was given tramadol for pain. (Tr. 387.)  On December 1, 2009, Newton had a 1.5-year post-spinal fusion appointment, in which he complained about pain, mostly related to his left shoulder. His record specifically noted he had no complaints

---

[2] The record does not contain evidence that Newton participated in physical therapy.

14

regarding his thoracic spine. (Tr. 333.) On exam, he had weakness of his left rotator cuff, but normal reflexes, normal lower extremity strength, and normal gait. (Tr. 333.) His December 2009 x-rays revealed some degenerative changes in his thoracic spine, normal cervical lordosis with some early degenerative changes, and slight listhesis of C7 and T1. (Tr. 333-334.) He was referred to an orthopedic shoulder clinic and was told to return to the spine clinic for follow up in one year. (Tr. 334.)

In April 2013, Newton went to the emergency room after a fall in his garage. Imaging of his left shoulder was normal, and lumbar spine imaging revealed minimal retrolisthesis of L5 upon S1, but an "otherwise, normal lumbar exam." (Tr. 867-68). Newton was discharged and told to take Tylenol as needed for pain. (Tr. 873.) Imaging in October 2015 revealed mild lower lumbar spine degenerative disc disease, L3-S1 with slight retrolisthesis at L5-S1. (Tr. 767.) After a large gap in treatment, Newton was seen for back pain at an orthopedic clinic in October 2020.[3] Imaging of his left shoulder was normal, and a lumbar spine x-ray revealed facet sclerosis and narrowing at L5-S1 and slight left lumbar scoliosis. He was diagnosed with spondylosis. (Tr. 1065.) Further imaging was ordered, and an MRI of his lumbar spine revealed a disc bulge at all lumbar levels, foraminal stenosis at all levels, but no central canal stenosis at any level. (Tr. 1386.)

The ALJ determined that Newton's limited treatment for his back pain and associated issues led to his finding that Newton was not disabled. The ALJ explained, "[w]hen reviewed in tandem, the contemporaneous medical evidence shows no significant objective findings and rudimentary or effective treatment. While he exhibits some ongoing functional limitations, the claimant can perform certain tasks with appropriate treatment and medical management." (Tr. 1181.) The ALJ

---

[3] Before the October 2020 appointment, it does not appear Newton sought treatment since his October 2015 back imaging, with the exception of two emergency room visits: In December 2018, Newton went to the ER with vomiting and abdominal pain; and in October 2020, Newton went to the ER with a broken thumb after he cut his finger while cutting wood. (Tr. 882, 1473.)

15

does not expand on the "certain tasks" Newton is capable of performing. If the Court is to infer that the "certain tasks" are the explicit and implied functions in the RFC determination, the Court is unable to determine how the ALJ came to that conclusion. The ALJ points to physical exams where Newton exhibited normal gait with full range of motion, but the Court fails to see how these findings support an inference that Newton can perform medium work, that is, lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds and stand or walk 6 hours in an 8-hour day. The ALJ also made no qualifications related to Newton's ability to work in extreme temperatures or stoop, kneel, crouch, or crawl, despite Newton's testimony that the cold gives him "excruciating" pain due to the metal rods implanted during the spinal fusion and that he is unable to bend over and has difficulty getting back up if he lowers himself to the ground. (Tr. 54, 56, 82, 1218, 1219.) Perhaps the ALJ discredited these subjective statements for appropriate reasons, but he does not discuss them whatsoever such that the Court is unable to determine whether correlating functional limitations were appropriately omitted from the RFC.

Even if the clinical findings on exam contradict Newton's statements about his symptoms and functional abilities, the ALJ's decision failed to support his conclusion that Newton can perform medium work. "Discounting a claimant's statements about the limiting effects of their symptoms is not equivalent to demonstrating by medical evidence that a claimant has the RFC to perform certain work-related activities." *Engle v. O'Malley*, No. 1:23-CV-69 JAR, 2024 WL 3936072, at *5 (E.D. Mo. Aug. 26, 2024) (finding "the ALJ failed to translate the clinical findings she discussed into Engle's functional limitations" and failed to support her RFC determination of medium work with additional restrictions); *see also Pleimann v. O'Malley*, No. 4:23-CV-130 RLW, 2024 WL 1283312, at *11 (E.D. Mo. Mar. 26, 2024) ("Plaintiff did not claim that he could not do light or sedentary work, or no work at all. Rather, Plaintiff claims that he cannot perform medium

16

work… that he has more restrictive lifting restrictions than occasionally lifting 50 pounds and frequently lifting 25 pounds, in addition to postural limitations, such as no twisting or crouching.").

An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not undergo this process here. In other words, although he thoroughly summarized the medical evidence of record, the ALJ did not justify how he translated his understanding of the medical evidence into a conclusion that Plaintiff could engage in medium work.

The Court recognizes that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality."[4] *Noerper*, 964 F.3d at 746. "Something, however, is needed," *Id.*, as an ALJ may not simply draw his own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646. "Here, the absence of evidence translating the medical evidence and subjective complaints into functional limitations….leaves us unable to determine the permissibility of the Commissioner's RFC determination." *Noerper*, 964 F.3d at 747. *See also Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation

---

[4] Notably, Newton does not argue the ALJ failed to develop the record. Although it is an ALJ's duty to develop the record; it is the plaintiff's responsibility to provide medical evidence to show that she is disabled. See 20 C.F.R. §§ 404.1512, 416.912. Here, claim representatives contacted Newton and/or his representative multiple times to request relevant information, and Newton failed to submit the requested information, including a Function Report and information about his activities of daily living. (Tr. 99, 101.) The original ALJ cut the first hearing short after determining from Newton's testimony that there could be additional medical facilities with records to support Newton's claims, and asked Newton's counsel to obtain additional records. (Tr. 58-63.) The ALJ held the record open and held a supplemental hearing on February 12, 2020, after additional records were obtained. (Tr. 68-93.) After the case was initially remanded, the new ALJ held another hearing on July 27, 2023, and held the record open once more for additional records to be obtained. (Tr. 1200.) If anything, the record illustrates that Newton was given several opportunities to submit additional evidence. *See Pinkston v. Colvin*, 2014 WL 2960958, at *5 (W.D. Mo. June 30, 2014) ("the ALJ had no indication that the record was incomplete or deficient regarding gaps in treatment, and so had no duty to investigate Plaintiff's claims for him").

17

marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

Upon consideration of the foregoing, the Court will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either his original conclusion as to Plaintiff's RFC, or any amended RFC determination he may render.

## VII. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

Dated this 25th day of March, 2025.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE